UNITED STATES v. CONAN et al.

(Circuit Court, W. D. Wisconsin. February 27, 1899.)

POSTMASTERS—RENTAL OF OFFICE—ACCOUNTABILITY AS AGENT.

The allowance made by the department to a postmaster for the purpose of renting an office is not an absolute allowance, but is to be disbursed by him as agent of the United States, and must be accounted for under the strict law of agency. If he secures an office for less than the allowance, he is entitled to retain therefrom only the amount actually expended. If he contracts to pay more than the allowance for a building or room, and sublets a portion for a sum which, together with the allowance, exceeds the rent paid, he must credit the excess to the government, to be deducted from the allowance.

D. F. Jones and Henry T. Sheldon, for plaintiff.
Catlin, Butler & Lyons, for defendants.

BUNN, District Judge.   This is an action brought by the United States to recover from Joseph D. Conan, former postmaster at Superior, Wis., and his bondsmen, the sum of $215.83 as a balance due from him to the government on his account as postmaster from January 1, 1894, to November 30, 1897.   Among other allegations in the complaint is this:   That said Joseph D. Conan did not faithfully discharge the duties and trusts imposed upon him by law, and did not faithfully account to the plaintiff for certain moneys received by him as postmaster; but that during said period said Conan did receive, as such postmaster, the sum of $215.83, being the proceeds of certain subleasings of the building and premises rented by the government for its post-office uses at said Superior, and which said sum rightfully belongs to the plaintiff, and has not been paid over after demand made therefor.   The answer admits everything alleged in the complaint except the right to receive the money, and alleges that the money rightfully belongs to the defendant; that it was derived exclusively from the rent of the lobby of the post office, a portion of the building rented by him, not used or required for post-office purposes, and in no manner connected with the business of said office; that said Conan was obliged to and did become personally liable for the rent of the building for post-office purposes in excess of the amount allowed by the post-office department; that, unless he could rent other portions of the building to make up the deficiency, he would be obliged to pay the same out of his own allowance; and, having succeeded in renting the lobby for more than enough to make up the deficiency, he claims and alleges the same to belong to him, and denies that the plaintiff has any right or interest therein.   The plaintiff moves for judgment upon the defendant's answer, and the sole question before the court is upon the above state of facts, whether the balance in the defendant's hands received for rent belongs to him or to the government.   The conclusion reached by the court is that it belongs to the government, and that the plaintiff is entitled to judgment upon the answer.   The reason generally stated is that the postmaster, in renting a building for the purpose of his office, is acting as the agent of the government.   He cannot speculate upon the transaction to make something for himself, but the saving in rent, if any, belongs to the government, which is the principal in the transaction.   The government pays the postmaster a salary and some other allowances, upon which he must depend for his compensation.

Section 420 of the postal regulations, which have the force of law, provides as follows:

"Expenditures for clerk hire, rent, fuel and light will be fixed by order specifying the allowance for each which shall so remain until otherwise ordered; and other allowances for furniture and miscellaneous and incidental expenses will be made only under special orders specifically for each expenditure.   Such allowances will in no case exceed the surplus revenue, as limited by section 415.   No postmaster can have credit on account of any

allowance, except to the extent of the money actually disbursed by him accordingly, and for which he renders proper vouchers."

Section 415 provides that:

"The postmaster-general may hereafter allow rent, light and fuel at offices of the third class in the same manner as he is now authorized by law to do in the case of offices of the first and second classes, and that no contract for rent for a third class post office shall be made for a longer period than one year, nor shall the aggregate allowance for rent made in any year exceed the amount appropriated for such purpose. Provided, that there shall not be allowed for the use of any third class post office for rent a sum in excess of $400 nor more than $60 for fuel and lights in any one year."

Section 172 provides as follows: .

"The salary of a postmaster, and such other expenses of the postal service authorized by law as may be incurred by him, and for which appropriations have been made, may be deducted out of the receipts of his office, under the direction of the postmaster general. No postmaster shall, under any pretense whatever, have, receive, or retain for himself, in the aggregate, more than the amount of his salary and his commission on the money-order business as hereinafter provided."

Another regulation requires the postmaster to report whether the clerk hire or other allowance was more or less than the service required.

It is quite apparent from these provisions what the attitude of the government is towards these allowances for rent. The department fixes a maximum sum which it will allow, and beyond which it will not go. In renting, the government is the principal in the transaction, and the postmaster acts as its agent. Like any other agent, it is his duty to act for the best interest and advantage of his principal, within the scope of his authority. If he is able to rent suitable rooms for a post office for anything less than the maximum sum allowed, it is his duty to do so. The government does not say to the postmaster, "We will allow you $400 for post-office rent, and you can furnish rooms at any price you can get them for." But under the law he is to act as the agent of the government, and as agent he is bound to use his best endeavors in the interest of his principal. It does not appear in the pleadings what allowance was made by the department for rent of a post office at Superior, nor what rent was actually paid. But from outside sources it seems that the allowance for rent and heating was $275 per year. The renting was done by the postmaster in the name and for the uses of the government. The defendant rented out certain parts of the building, not required for post-office purposes, to third persons, and in the course of the four years received rent therefor, which, with the maximum amount allowed by the government, leaves in his hands $215.83 over and above the rent which he has had to pay. If the question were to be decided simply upon equitable principles, who can say that the $275 allowed by the government for rent would be a fair proportion to be paid for that portion of the building occupied by the government? The presumption would rather be, as there is a surplus left in his hands after the rent account is closed, that a less sum than the amount allowed by the government would belong to it to pay; that is to say, that a less sum than the $275 per annum would con-

stitute the just proportion of the burden to be borne by that portion of the building devoted to the uses of a post office. But I assume that the question is rather one of strict law, to be decided upon legal rules governing the relation of principal and agent. These rules are very strict, and are of a highly moral tone. The morality of the law of agency and trusts, both at common law and in equity, is, perhaps, of a higher and sterner kind than is practiced in most communities. If an agent takes the money of his principal, and invests it in profitable speculation, he can gain nothing thereby for himself. If profits succeed, they belong to the principal. If loss follows, that must be borne by the agent, and he will be held liable for principal and interest as for a conversion of the funds. Suppose the case of a trustee having possession of a trust fund of $9,000 for the purpose of being invested in real estate for his principal. The best opportunity presenting itself for such investment is the purchase of a piece of real estate held at $10,000. He decides to put in $1,000 of his own money, and make the investment, which results in a great gain. In one year the land is sold for $20,000. Now, the trustee will not be allowed to take out $2,000 and hand over the $18,000 to his principal. The law will only justify the transaction so far as to give him back his $1,000 with legal interest. It will not allow him to share in the profits with his principal. Such a strict rule is deemed necessary to enforce honesty and fair dealing. The agent is not allowed to make himself a partner, nor to mix up his own business with the business of his principal. He cannot speculate in that way, and, if he does, the law will hold him to a strict account for all profits, while, if there are losses, he will have to bear them. There is no danger of loss if he keep himself in the line of his agency, acting for the sole benefit and advantage of his principal, and does not try to become a partner or principal with his principal. Good faith in his agency is all that is required.

These principles seem decisive of this case. There was nothing improper in renting a building that cost more than the government allowance for a post office. It might well happen that such cases would occur where this would be necessary or preferable. It might not be practicable to obtain just the rooms proper for a post office without taking other rooms in the same building. But in so doing the agent must bear in mind his agency, and not speculate on the transaction. If he sublets the rooms not required for the purposes of the government for a sum which, together with the allowance made by the government for the rent, is in excess of rent paid, the surplus should be credited to the government, and deducted from the government allowance. The same ruling was made in the Eastern district of Michigan by Judges Jackson and Brown in U. S. v. Saylor, 31 Fed. 543. There a postmaster rented a post office for the government at $1,000 per year, and received a secret rebate of $150 from his landlord, and also sublet portions of the space so rented for a news stand and a confectionery stand, and received rent therefor. It was held that he and the sureties upon his bond were liable to the government for such rebate and rent; and that it was no defense to such claim for the rebate that the defendant had incurred

expense in procuring and fitting up boxes and making repairs for which no allowance was made by the rules of the department. Judge Brown of the district court, now one of the justices of the supreme court, states the principles applicable to the case very clearly, in part as follows:

"His retention of the rents received from his subtenants is equally indefensible. He rented for the government, and as the agent of the post-office department, certain space for the post office. This space belonged absolutely to the government during the continuance of the lease. If it was larger than was necessary for the purpose of the post office, and defendant chose to lease the superfluous space to private individuals, he did so as the agent of the government, and the government is entitled to the rent. In other words, he has no right to receive rents as an individual for space for which he pays rent as the agent of the government. If the government had placed in his hands a thousand dollars for office expenses, and had taken vouchers from him to that amount, it might well be argued that it was no concern of the government what he did with the money, so long as proper facilities were provided. But the money was placed in his hands to rent a post office."

This Michigan case differs from the one at bar in this: that in that case the sum agreed to be paid for rent was the same as the government allowance for that office, while in this case it was more, the postmaster agreeing to pay the excess; but the principles applicable to the case are much the same. The government was the principal in the transaction, and the agent cannot be allowed a profit on it. There will be a judgment in favor of the plaintiff for the sum of $215.83, with interest from November 30, 1897.